# United States District Court
# District of Massachusetts

YONG LI,
    Plaintiff,

    v.                                 CIVIL ACTION NO. 11-11557-NMG

JEFFREY C. HUFFMAN, M.D.,
RENEE M. SORRENTINO, M.D.,
MARINA V. YAROSHENKO, M.D.,
MASSACHUSETTS GENERAL HOSPITAL,
    Defendants.

# *REPORT AND RECOMMENDATION ON MOTION OF DEFENDANT, RENEE M. SORRENTINO, M.D. TO DISMISS PLAINTIFF, YONG LI'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) (#31), MOTION OF DEFENDANT, JEFFREY C. HUFFMAN, M.D. TO DISMISS PLAINTIFF, YONG LI'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) (#33), AND MOTION OF DEFENDANT, MARINA V. YAROSHENKO, M.D. TO DISMISS PLAINTIFF, YONG LI'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) (#35)*

COLLINGS, U.S.M.J.

## *I. Introduction*

This action arises from the psychiatric evaluation and treatment of *pro se* plaintiff, Yong Li ("Li"), while she was a patient at Massachusetts General Hospital ("MGH"). On September 6, 2011, Li filed a complaint (#1), later

amended by motion (##24, 25), against Renee M. Sorrentino, M.D. ("Sorrentino"), Marina V. Yaroshenko, M.D. ("Yaroshenko"), Jeffrey C. Huffman, M.D. ("Huffman"), and MGH alleging claims for violation of 42 U.S.C. § 1981 for race discrimination, medical/psychiatric malpractice, and violation of Mass. Gen. L. c. 111 § 25J and Mass. Gen. L. c. 123 § 23A for failure to provide competent interpreter services. More particularly, Li contends in Count III of the amended complaint[1] that Sorrentino, Yaroshenko, and Huffman[2] (collectively "the defendants") are liable for medical/psychiatric malpractice based on their failure to provide competent interpreter services, to exercise the proper duty of care, and to obtain informed consent during Li's psychiatric evaluations.

On February 10, 2012, the defendants each filed a separate motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim (##31, 33, 35), together with supporting memoranda. (##32, 34, 36) In seeking dismissal, the defendants are advancing affirmative

---

[1] The defendant doctors are only named in Count III of the amended complaint.

[2] MGH is also named in Count III, but is not a party to the dispositive motions now at hand.

defenses, to wit, res judicata and absolute privilege. Li has filed an opposition to the trio of motions (#39) as well a memorandum in support thereof (#40). With the record complete, the motions to dismiss are poised for resolution.

## II. Background

The facts of this case, taken in the light most favorable to the plaintiff, are as follows. Li is a resident of Sudbury, Massachusetts, but she is originally from Beijing, China, and her native language is Mandarin. (#25 ¶¶ 3, 9) The plaintiff speaks limited English; her primary language remains Mandarin. (#25 ¶ 9)

In 2005, Li filed a discrimination action against her former employer, Raytheon Corporation, in the federal court in Boston. (#25 ¶ 11) That suit was dismissed by the court in 2006. (#25 ¶ 11) Li then filed a discrimination complaint in the Middlesex Superior Court, but that case was ultimately dismissed by the Massachusetts Appeals Court in August 2008. (#25 ¶ 11)

In response to this latter dismissal, on September 4, 2008, Li went to the John Adams Courthouse in Boston with the intent to conduct a Chinese symbolic suicide.[3] (#25 ¶ 13) The plaintiff stood on a balcony inside the

---

[3] According to the plaintiff, Chinese symbolic suicide "is a common form of demonstration or protest used by Chinese nationals to simulate a suicidal act. This is done to force the Chinese government or an employer...to respond to the protesters' wishes...[or] to bring media attention to their cause." (#23 ¶ 13)

4

courthouse holding a sign with the word "Injustice" written on it and a mock noose around her neck and waist. (#25 ¶ 13) During the demonstration, Li lost her footing and fell approximately twenty feet onto the staircase below. (#25 ¶ 13) The plaintiff was transported to MGH for treatment of her physical injuries, and was thereafter involuntarily moved to the inpatient psychiatric ward at the hospital. (#25 ¶¶ 14, 16) Li alleges that although she "speaks with a heavy accent and in broken English," she was not apprised of her right to speak with an interpreter at MGH. (#25 ¶ 14)

After being transferred to the inpatient psychiatric ward, Li was initially met by Yaroshenko, an attending psychiatrist at MGH, to whom the plaintiff made repeated requests to be seen by a Chinese doctor. (#25 ¶ 16) Yaroshenko denied Li's requests, did not offer her any type of competent interpreter services, and conducted Li's psychiatric evaluation herself. (#25 ¶ 16) The plaintiff claims that Yaroshenko's evaluation was flawed due to her (Li's) inability to understand Yaroshenko's "very thick Russian accent" or the medical terminology and Yaroshenko's misinterpretations of Li's broken English. (#25 ¶ 16) Li began to have panic attacks consequent to feeling helpless and misunderstood; Yaroshenko prescribed Ativan. (#25 ¶ 16)

On or about September 17, 2008, the plaintiff received a copy of the

petition for civil commitment filed by the defendants. (#25 ¶ 18) That same day Li again requested that Yaroshenko provide her with a Chinese doctor[4], but that request was denied. (#25 ¶ 19) This denial exacerbated the plaintiff's feelings of helplessness which, in turn, caused more frequent panic attacks. (#25 ¶ 19)

On September 22 and 23, 2008, a native Mandarin-speaking interpreter visited the plaintiff and was present at her treatment sessions those two days. (#25 ¶ 20) Li contends that she "reiterated through the interpreters that she needed a Chinese doctor because she was being misunderstood by the doctors and treatment team because of the language barrier." (#23 ¶ 20) There was no follow-up with respect to the concerns voiced by Li, and she had no further visits from an interpreter. (#23 ¶ 20)

On September 29, 2008, Huffman replaced Yaroshenko as the attending psychiatrist at MGH. (#25 ¶ 21) Huffman did not offer Li any competent interpreter services in conducting his evaluation.[5] (#25 ¶ 21)

---

[4] In addition to the verbal requests for a Mandarin-speaking clinician, Li claims that she also made similar requests in writing. (#25 ¶ 20)

[5] Li also underwent an independent psychiatric evaluation by Dr. Matthew Dumont ("Dumont"), a psychiatrist who had extensive experience with the immigrant community in Massachusetts. (#25 ¶ 22) According to the plaintiff, Dumont understood her explanation of the symbolic suicide and determined that she was not suicidal, impulsive, nor delusional. (#25 ¶ 22) Dumont testified at the plaintiff's two hearings to the effect that she "had no psychotic symptoms and that she would not benefit from taking antipsychotic

On October 3, 2008, at Li's first Rogers hearing[6], the court issued an Order of Civil Commitment for a time period not to exceed forty-five days from the date of the Order. (#25 ¶ 25) Based on her evaluation of Li, Yaroshenko had submitted an Affidavit as to Competency and Proposed Treatment of Yong Li for the hearing. (#25 ¶ 23)

Huffman arranged for Dr. Albert Yeung ("Yeung"), a Mandarin-speaking psychiatrist at MGH, to evaluate Li on October 22, 2008. (#25 ¶ 26) In Yeung's opinion there was insufficient evidence to support a finding that the plaintiff suffered from psychosis or a psychotic disorder. (#25 ¶ 26)

In addition, Huffman brought in Sorrentino, an attending psychiatrist at MGH, to evaluate Li and submit a report to the court. (#25 ¶ 28) Sorrentino's report supported the civil commitment of the plaintiff. (#25 ¶ 28) Li claims that Sorrentino's evaluation was flawed due to misinterpretations of Li's broken English and Sorrentino's reliance on the notes of other MGH staff members. (#25 ¶ 28)

A second Rogers hearing was held on October 23, 2008. (#25 ¶27)

---

medications." (#25 ¶ 22)

[6]
 A hearing is required prior to the psychiatric commitment of a person, unless waived. Mass. Gen. L. c. 123 § 6. The name for the competency hearing derives from the case *Rogers v. Commissioner of the Dep't of Mental Health*, 390 Mass. 489, 494-499, 458 N.E.2d 308, 312-13 (1983). *See, e.g., Commonwealth v. Brown*, 449 Mass. 747, 758-59, 872 N.E.2d 711, 721 (2007).

Sorrentino's report was submitted for the court's consideration. (#25 ¶ 28) Huffman opined that Li suffered from delusional disorder, but conceded that his opinion and that of Sorrentino differed from the opinions of Dumont and Yeung. (#25 ¶ 27) Huffman testified that Li "lacked capacity to understand the nature of her illness and that [her] unwillingness to take antipsychotic medications indicated that she was delusional and presented a harm to herself and others." (#26 ¶ 27) According to the plaintiff, Huffman's allegedly faulty assessment of her condition and his dismissal of the opinions of Dumont and Yeung resulted from "non-compliance with state law and hospital procedure for language access for patients who speak limited English." (#25 ¶ 27)

At the conclusion of the hearing, the court issued an order of adjudicated incompetence, thereby requiring Li to take antipsychotic medication. (#25 ¶ 29) The plaintiff continued to be held and medicated at MGH until November 7, 2008. (#25 ¶ 29)

On September 6, 2011, the plaintiff instituted the present action, and thereafter amended her complaint. The defendants have moved, separately, to dismiss Li's amended complaint with prejudice for failure to state a claim, arguing that the plaintiff's claims in this case are barred by the doctrines of res judicata and absolute privilege.

In addition to the facts alleged in the amended complaint, the Court also takes judicial notice of the following facts gleaned from the certified state court documents filed by the defendants.[7] On or about January 31, 2009, Li brought a state court action in the Suffolk Superior Court against Sorrentino for defamation, tortious interference with advantageous relations, and intentional infliction of emotional distress (the "Sorrentino Action"). (#44, Exh. A) These

---

[7]

> As the First Circuit has explained:
>
> > 'Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment.' *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.,* 524 F.3d 315, 321 (1st Cir. 2008); *see also* Fed. R. Civ. P. 12(d) ('If, on a motion under Rule 12(b)(6) ..., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.'). We have recognized an exception to this rule 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint,' which courts may properly consider on 12(b)(6) motions. *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001) (quotation marks and citation omitted).
>
> *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1 Cir., 2009); *Gargano v. Liberty International Underwriters, Inc.*, 572 F.3d 45, 47 n.1 (1 Cir., 2009).

The certified state court documents submitted by the defendants fall within the articulated exception. *Giragosian v. Ryan,* 547 F.3d 59, 66 (1 Cir., 2008)("A court may consider matters of public record in resolving a Rule 12(b)(6) motion to dismiss. Matters of public record ordinarily include documents from prior state court adjudications." (internal citations and quotation marks omitted)), *cert. denied,* 129 S. Ct. 2020 (2009) ; *Andrew*

Footnote 7 (continued)
*Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1 Cir., 2008)("[W]here the motion to dismiss is premised on a defense of res judicata - as is true in the case at hand - the court may take into account the record in the original action."). These state court documents may properly be considered without converting the motions to dismiss into motions for summary judgment.

claims were founded upon Sorrentino's interview of Li at MGH on October 18, 2008, and statements made by Sorrentino in her resultant report that was submitted to the court in Li's second Rogers hearing. (#44, Exh. A ¶¶ 4-14) Applying the doctrine of absolute privilege, the state court dismissed the Sorrentino Action on or about July 21, 2009. (#44 at 7-14) Sorrentino's written evaluation of Li's mental condition was found to have been made in the course of a judicial proceeding. As a consequence, the judge ruled that "Dr. Sorrentino's interview [of Li], and her written report thereof, are protected under the doctrine of absolute privilege, and cannot form the basis of a defamation claim." (#44 at 11) In like manner, the judge determined that "Li's other claims arise out of the same allegedly defamatory statements made in Dr. Sorrentino's report, and are likewise barred by the doctrine of absolute privilege." (#44 at 12)

On November 23, 2009, Li brought a state court action in the Suffolk Superior Court against Yaroshenko and Huffman for civil conspiracy, tortious interference with advantageous relations, and intentional infliction of emotional distress (the "Yaroshenko/Huffman Action"). (#42, Exh. A; #43, Exh. A) These claims arose from the statements made by Yaroshenko in her affidavit that was submitted in Li's first Rogers hearing, and statements made

by Huffman in his testimony in Li's two Rogers hearings. (#42, Exh. A ¶¶ 7-13, 18-19; #43, Exh. A ¶¶ 7-13, 18-19)  The Yaroshenko/Huffman Action was dismissed on May 6, 2010, with the court adopting the reasoning of the Sorrentino Action, i.e., that the doctrine of absolute privilege barred the claims. (#42 at 10-11; #43 at 10-11)

### III. The Standard of Review

A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim.  In deciding such a motion, a court must "'accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor.'" *Haley v. City of Boston*, 657 F.3d 39, 46 (1 Cir., 2011) (quoting *Artuso v. Vertex Pharm, Inc.*, 637 F.3d 1, 5 (1 Cir., 2011)).  "[T]he complaint must 'contain sufficient factual matter . . . to state a claim to relief that is plausible on its face.'" *Haley*, 657 F.3d at 46 (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, _, 129 S. Ct. 1937, 1949 (2009) (further internal quotations and citation omitted) (alteration in original)). When considering a motion to dismiss, a court "may augment these facts and inferences with data points gleaned from documents incorporated into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley*, 657 F.3d at 46 (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12,

15 (1 Cir., 2003)).

The defendants all assert and rely on the affirmative defenses of res judicata and absolute privilege in moving to dismiss. (## 32, 34, 36) "As a general rule, a properly raised affirmative defense can be adjudicated on a motion to dismiss so long as (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." *Rodi v. Southern New England School of Law*, 389 F.3d 5, 12 (1 Cir., 2004); *Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 324 (1 Cir., 2008); *Nisselson v. Lernout*, 469 F.3d 143, 150 (1 Cir., 2006)("While most Rule 12(b)(6) motions are premised on a plaintiff's putative failure to state an actionable claim, such a motion may sometimes be premised on the inevitable success of an affirmative defense."), *cert. denied,* 550 U.S. 918 (2007). The burden is on the defendants to establish the affirmative defenses based only on the facts set out in the complaint or other allowable documents. *See SBT Holdings, LLC v. Town of Westminster*, 547 F.3d 28, 36 (1 Cir., 2008); *In re Colonial Mortg. Bankers Corp.,* 324 F.3d 12, 15-16 (1 Cir., 2003).

Lastly, of course, "pro se pleadings are to be liberally construed." *Donovan v. Maine,* 276 F.3d 87, 94 (1 Cir., 2002).

IV. Discussion

The defendants argue that the judgments in Li's state court actions should have a res judicata effect on the present action, and thus work to bar Li's malpractice claim.[8] "Federal courts are to give state court judgments res judicata effect that the state law prescribes." *Isaac v. Schwartz,* 706 F.2d 15, 16 (1 Cir., 1983); *Barreto-Rosa v. Varona-Mendez,* 470 F.3d 42, 45 (1 Cir., 2006). The application of Massachusetts state law is, therefore, appropriate. Concerning that law, the First Circuit has explained:

> Massachusetts recognizes two distinct types of preclusion arising out of the maintenance of prior litigation: res judicata (claim preclusion) and collateral estoppel (issue preclusion). *See Kobrin v. Bd. of Regist. in Med.,* 444 Mass. 837, 832 N.E.2d 628, 634 (Mass. 2005)....
>
> Res judicata 'makes a valid final judgment conclusive on the parties ... and prevents relitigation of all matters that were or could have been adjudicated in the action.' *Id.*...
>
> The operation of res judicata requires the presence of three elements: '(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits.' *Kobrin,* 832 N.E.2d at 634; *see McDonough v. City of Quincy,* 452 F.3d 8, 16 (1st Cir. 2006).

---

[8] The three motions to dismiss shall be addressed together for purposes of the res judicata discussion.

*Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 52 (1 Cir., 2008).

In the case at hand, the first and third elements required for the application of res judicata have been met: the three individual defendants in this federal action, Huffman, Sorrentino and Yaroshenko, were all named as defendants in one of Li's two state court actions, and final judgment on the merits was entered in both state court actions.[9] The issue, then, is whether the identity of the cause of action exists.

When discussing this second element of res judicata, the First Circuit has recognized that:

> Massachusetts deems causes of action identical for claim preclusion purposes if they 'grow[ ] out of the same transaction, act, or agreement, and seek[ ] redress for the same wrong.' *Brunson v. Wall,* 405 Mass. 446, 541 N.E.2d 338, 341 n. 9 (Mass. 1989) (quoting *Mackintosh v. Chambers,* 285 Mass. 594, 190 N.E. 38, 39 (Mass. 1934)).
>
> *****
>
> Discrete theories of liability may constitute identical causes of action for claim preclusion purposes if they

---

[9] "Ordinarily, a dismissal for failure to state a claim is treated as a dismissal on the merits, and there is abundant case law to this effect." *AVX Corp. v. Cabot Corp.*, 424 F.3d 28, 30 (1 Cir., 2005); *Airframe Systems, Inc. v. Raytheon Co.*, 601 F.3d 9, 14 (1 Cir., 2010).

are based on the same nucleus of operative facts. *See Fassas v. First Bank & Trust Co.,* 353 Mass. 628, 233 N.E.2d 924, 925 (Mass. 1968) (explaining that '[t]he statement of a different form of liability is not a different cause of action, provided it grows out of the same transaction') (citation and internal quotation marks omitted); *see also Isaac v. Schwartz,* 706 F.2d 15, 17 (1st Cir.1983) (interpreting Massachusetts law to hold that 'new legal theories, embodied in different statutes and different common law doctrines,' are still identical causes of action for claim preclusion purposes).

*Andrew Robinson Int'l*, 547 F.3d at 52; *see also McDonough v. City of Quincy,* 452 F.3d 8, 16 (1 Cir., 2006); *TLT Const. Corp. v. A. Anthony Tappe and Associates, Inc.,* 48 Mass. App. Ct. 1, 8, 716 N.E.2d 1044, 1051 (Mass. App. Ct., 1999) ("A claim is the same for [claim preclusion] purposes if it is derived from the same transaction or series of connected transactions. The statement of a different form of liability is not a different cause of action, provided it grows out of the same transaction, act, agreement, and seeks redress for the same wrong." (internal citations and quotation marks omitted)).

When considering whether a constellation of facts relates to a single transaction[10], a pragmatic approach is to be taken "'giving weight to such factors as whether the facts are related in time, space and origin or motivation, whether they form a convenient trial unit, and whether their treatment as a

---

[10] "'Although a set of facts may give rise to multiple counts based on different legal theories, if the facts form a common nucleus that is identifiable as a transaction or series of related transactions, then those facts represent one cause of action.'" *Herman v. Meiselman*, 541 F.3d 59, 62 (1 Cir., 2008)(quoting *Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.,* 48 F.3d 576, 583-84 (1 Cir., 1995)).

unit conforms to the parties' expectations.'" *McDonough*, 452 F.3d at 16 (quoting *Mancuso v. Kinchla,* 60 Mass. App. Ct. 558, 571, 806 N.E.2d 427, 438 (Mass. App. Ct., 2004)); *Herman v. Meiselman*, 541 F.3d 59, 62-3 (1 Cir., 2008).[11]

Examination of the complaints in the Sorrentino Action, the Yaroshenko/Huffman Action, and Li's amended complaint in the present action, plainly reveals that all of Li's claims arise out of a single transaction, to wit, her involuntary commitment at MGH in 2008 subsequent to the events at the John Adams Courthouse in Boston, and the psychiatric treatment and evaluation that she received from the psychiatrists at MGH during that hospitalization. The complaint in the Sorrentino Action concerned the statements made by Sorrentino in her psychiatric report submitted for Li's second Rogers hearing. (#44, Exh. A ¶¶ 3-13) There, Li alleged that Sorrentino made false statements, took words out of context, and selectively included facts about the symbolic suicide in her report, and that such statements amounted to defamation of Li. (#44, Exh. A ¶¶ 3-13) Li's

---

[11]

A similar analysis is conducted when the question is one of federal law, *viz.,* "a particular legal theory not pressed in the original suit will nonetheless be precluded in the subsequent one if it prescinds from the same set of operative facts." *Kale v. Combined Ins. Co. of America,* 924 F.2d 1161, 1166 (1 Cir.), *cert. denied,* 502 U.S. 816 (1991).

additional claims for tortious interference with advantageous relationships and intentional infliction of emotional distress arose from the same allegedly defamatory statements. (#44, Exh. A ¶¶ 18-19) All of Sorrentino's alleged actions took place while Sorrentino was undertaking a psychiatric evaluation of Li during her involuntary commitment at MGH in 2008.

The complaint in the Yaroshenko/Huffman Action concerned actions taken by Yaroshenko and Huffman during their psychiatric care and evaluation of Li during her 2008 hospitalization at MGH. (#43, Exh. A ¶¶ 7-9, 13; #42, Exh. A ¶¶ 10-13, 18, 22, 24) There, Li alleged that in her affidavit, Yaroshenko made false statements and indicated that Li had threatened others. (#43, Exh. A ¶ 9) Li also alleged that in his Rogers hearing testimony, Huffman misleadingly stated that Li suffered from delusional disorder. (#42, Exh. A ¶ 12) Li claimed that Yaroshenko and Huffman conspired to have her civilly committed. (#42, Exh. A ¶ 31; #43, Exh. A ¶ 31) Li's additional claims for tortious interference with advantageous relationship and intentional infliction of emotional distress arose from the same events that purportedly evidenced the conspiracy.[12] (#42, Exh. A ¶ 32; #43, Exh. A ¶¶ 32-33)

---

[12] Yaroshenko was not named as a defendant in the claim for intentional infliction of emotional distress in the Yaroshenko/Huffman Action.

The allegations in Li's amended complaint in this federal case also involve actions taken by the psychiatrists during the course of their evaluation and treatment of Li while she was involuntarily committed at MGH in 2008. The instant case concerns the defendants' purported failure to provide competent interpreter services, to exercise the proper duty of care, and to obtain informed consent during Li's psychiatric evaluations. (#25 ¶ 1) Li alleges that the defendants' actions constitute medical/psychiatric malpractice for which she is entitled to recover damages. (#25 ¶¶ 35-37)

The defendants argue that "[i]n the present Federal Court action, the factual underpinnings are identical to those recited in the State Court action[s] and the alleged damages are identical." (##32 at 5; 34 at 6; 36 at 6) The defendants' position has merit. All of the allegations in all of Li's actions relate to the same time period in 2008 when she was hospitalized at MGH. All of Li's allegations involve the same common nucleus of facts, i.e., her evaluations and treatment by the psychiatrists at MGH during her sixty-day civil commitment. All of Li's allegations could have been brought in a single complaint and comfortably "form a convenient trial unit." *McDonough*, 452 F.3d at 16. In short, what Li is advancing here with her medical/psychiatric malpractice claim

is a new legal theory based on the same set of facts. That being the case, the identity of cause of action prong of the res judicata test has been met.

The Court need go no further. Having determined that the defendants have established all of the elements of their affirmative defense, Li's federal court action is barred by res judicata and her amended complaint should be dismissed.

## IV. Recommendation

For all the reasons stated, I RECOMMEND that the Motion Of Defendant, Renee M. Sorrentino, M.D. To Dismiss Plaintiff, Yong Li's Amended Complaint Pursuant To Fed. R. Civ. P. 12(b)(6) (# 31), Motion Of Defendant, Jeffrey C. Huffman, M.D. To Dismiss Plaintiff, Yong Li's Amended Complaint Pursuant To Fed. R. Civ. P. 12(b)(6) (#33), and Motion Of Defendant, Marina V. Yaroshenko, M.D. To Dismiss Plaintiff, Yong Li's Amended Complaint Pursuant To Fed. R. Civ. P. 12(b)(6) (#35) be ALLOWED and that Final Judgment enter accordingly.

## V. Review by the District Judge

The parties are hereby advised that any party who objects to this recommendation must file a specific written objection thereto with the Clerk

of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1 Cir., 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1 Cir., 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1 Cir., 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1 Cir., 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603(1 Cir., 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

*/s/ Robert B. Collings*
ROBERT B. COLLINGS
United States Magistrate Judge

May 18, 2012.