# United States District Court
# District of Massachusetts

YONG LI,
Plaintiff,

v. CIVIL ACTION NO. 11-11557-NMG

JEFFREY C. HUFFMAN, M.D.,
RENEE M. SORRENTINO, M.D.,
MARINA V. YAROSHENKO, M.D.,
MASSACHUSETTS GENERAL HOSPITAL,
Defendants.

## *REPORT AND RECOMMENDATION ON MOTION OF DEFENDANT, MASSACHUSETTS GENERAL HOSPITAL TO DISMISS COUNT II THROUGH V OF PLAINTIFF, YONG LI'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) (#9)*

COLLINGS, U.S.M.J.

## *I. Introduction*

This action arises from the psychiatric evaluation and treatment of *pro se* plaintiff, Yong Li ("Li"), while she was a patient at Massachusetts General Hospital ("MGH"). On September 6, 2011, Li filed a complaint (#1), later amended by motion (##24, 25),[1] against Renee M. Sorrentino, M.D. ("Sorrentino"), Marina V. Yaroshenko, M.D. ("Yaroshenko"), Jeffrey C. Huffman, M.D. ("Huffman"), and MGH alleging claims for violation of 42 U.S.C. § 1981 for race discrimination (Count I), medical/psychiatric malpractice (Count III), violation of Mass. Gen. L. c. 111 § 25J (Count IV) and violation of Mass. Gen. L. c. 123 § 23A (Count IV) for failure to provide competent interpreter services.[2]

---

1 In the amended complaint, the plaintiff withdrew Count II alleging that MGH violated Title XVII of the Social Security Act and 42 CFR § 482.12.

2 The defendant doctors were only named in Count III, medical/psychiatric malpractice, of the amended complaint and that claim against them has been dismissed.

On February 10, 2012, the defendant doctors, Sorrentino, Yaroshenko, and Huffman, each filed a separate motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim (##31, 33, 35), together with supporting memoranda. (##32, 34, 36) In seeking dismissal, the defendants advanced affirmative defenses, to wit, res judicata and absolute privilege. Li filed an opposition to the trio of motions (#39) as well a memorandum in support thereof (#40). On July 29, 2012, this Court granted each defendant doctor's motion to dismiss for failure to state a claim. Therefore, Count III survives only against MGH. (#40)

On November 3, 2011, defendant MGH filed a motion to dismiss Counts II-V of the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim (#9), together with a supporting memorandum. (#10) After the motion to dismiss was submitted, Li filed an amended complaint on December 1, 2011. (#25) Two weeks later MGH filed an answer to the amended complaint. (#26) In its Seventh Defense, MGH specifically incorporated its Motion to Dismiss Count III. (#26, Seventh Defense) This was the proper way of handling the amended complaint, "and the motion to dismiss (#9), to the extent that a dismissal of Count III of the amended complaint is sought, remains outstanding." (Report and Recommendation on Motions ##4, 9, 12, 15 & 27 at 3) Li has filed an opposition to the motion to dismiss Count III. (#38) With the record complete, the motion to dismiss Count III of the amended complaint is poised for resolution.

## *II. Background*

The facts of this case, taken in the light most favorable to the plaintiff, are as follows. Li is a resident of Sudbury, Massachusetts, but she is originally from Beijing, China, and her native language is Mandarin. (#25 ¶¶ 3, 9) The plaintiff speaks limited English; her primary language remains Mandarin. (#25 ¶ 9)

In 2005, Li filed a discrimination action against her former employer,

Raytheon Corporation, in the federal court in Boston. (#25 ¶ 11) That suit was dismissed by the Court in 2006. (#25 ¶ 11) Li then filed a discrimination complaint in the Middlesex Superior Court, but that case was ultimately dismissed by the Massachusetts Appeals Court in August 2008. (#25 ¶ 11)

In response to this latter dismissal, on September 4, 2008, Li went to the John Adams Courthouse in Boston with the intent to conduct a Chinese symbolic suicide.[3] (#25 ¶ 13) The plaintiff stood on a balcony inside the courthouse holding a sign with the word "Injustice" written on it and a mock noose around her neck and waist. (#25 ¶ 13) During the demonstration, Li lost her footing and fell approximately twenty feet onto the staircase below. (#25 ¶ 13) The plaintiff was transported to MGH for treatment of her physical injuries. (#25 ¶ 14) Li alleges that although she "speaks with a heavy accent and in broken English," she was not apprised of her right to speak with an interpreter while in the care of the emergency department at MGH or while she was recovering from surgery for seven days. (#25 ¶¶ 1, 14)

On September 11, 2008, Li was involuntarily moved to the inpatient

---

3 According to the plaintiff, Chinese symbolic suicide "is a common form of demonstration or protest used by Chinese nationals to simulate a suicidal act. This is done to force the Chinese government or an employer...to respond to the protesters' wishes...[or] to bring media attention to their cause." (#25 ¶ 13)

psychiatric ward at the hospital. (#25 ¶ 16) After being transferred, Li was initially met by Yaroshenko, an attending psychiatrist at MGH, to whom the plaintiff made repeated requests to be seen by a Chinese doctor. (#25 ¶ 16) Yaroshenko denied Li's requests, did not offer her any type of competent interpreter services, and conducted Li's psychiatric evaluation herself. (#25 ¶ 16) The plaintiff claims that Yaroshenko's evaluation was flawed due to her (Li's) inability to understand Yaroshenko's "very thick Russian accent" or the medical terminology and Yaroshenko's misinterpretations of Li's broken English. (#25 ¶ 16) Li began to have panic attacks consequent to feeling helpless and misunderstood; Yaroshenko prescribed Ativan. (#25 ¶ 16)

On or about September 17, 2008, the plaintiff received a copy of the petition for civil commitment filed by the defendants. (#25 ¶ 18) That same day Li again requested that Yaroshenko provide her with a Chinese doctor[4], but that request was denied. (#25 ¶ 19) This denial exacerbated the plaintiff's feelings of isolation and helplessness which, in turn, caused more frequent panic attacks. (#25 ¶¶ 2, 19)

On September 22 and 23, 2008, a native Mandarin-speaking interpreter

4 In addition to the verbal requests for a Mandarin-speaking clinician, Li claims that she also made similar requests in writing. (#25 ¶ 20)

visited the plaintiff and was present at her treatment sessions those two days. (#25 ¶ 20) Li contends that she "reiterated through the interpreters that she needed a Chinese doctor because she was being misunderstood by the doctors and treatment team because of the language barrier." (#25 ¶ 20) There was no follow-up with respect to the concerns voiced by Li, and she had no further visits from an interpreter. (#25 ¶ 20)

On September 29, 2008, Huffman replaced Yaroshenko as the attending psychiatrist at MGH. (#25 ¶ 21) Huffman did not offer Li any competent interpreter services in conducting his evaluation.[5] (#25 ¶ 21)

On October 3, 2008, at Li's first Rogers hearing[6], the Court issued an Order of Civil Commitment for a time period not to exceed forty-five days from the date of the Order. (#25 ¶ 25) Based on her evaluation of Li, Yaroshenko had submitted an Affidavit as to Competency and Proposed Treatment of Yong

---

5

Li also underwent an independent psychiatric evaluation by Dr. Matthew Dumont ("Dumont"), a psychiatrist who had extensive experience with the immigrant community in Massachusetts. (#25 ¶ 22) According to the plaintiff, Dumont understood her explanation of the symbolic suicide and determined that she was not suicidal, impulsive, nor delusional. (#25 ¶ 22) Dumont testified at the plaintiff's two hearings to the effect that she "had no psychotic symptoms and that she would not benefit from taking antipsychotic medications." (#25 ¶ 22)

6

A hearing is required prior to the psychiatric commitment of a person, unless waived. Mass. Gen. L. c. 123 § 6. The name for the competency hearing derives from the case *Rogers v. Commissioner of the Dep't of Mental Health*, 390 Mass. 489, 494-499, 458 N.E.2d 308, 312-15 (1983). *See, e.g., Commonwealth v. Brown*, 449 Mass. 747, 758-59 & n.7, 872 N.E.2d 711, 721 & n.7 (2007).

Li for the hearing. (#25 ¶ 23)

Huffman arranged for Dr. Albert Yeung ("Yeung"), a Mandarin-speaking psychiatrist at MGH, to evaluate Li on October 22, 2008. (#25 ¶ 26) In Yeung's opinion there was insufficient evidence to support a finding that the plaintiff suffered from psychosis or a psychotic disorder. (#25 ¶ 26)

In addition, Huffman brought in Sorrentino, an attending psychiatrist at MGH, to evaluate Li and submit a report to the court. (#25 ¶ 28) Sorrentino's report supported the civil commitment of the plaintiff. (#25 ¶ 28) Li claims that Sorrentino's evaluation was flawed due to misinterpretations of Li's broken English and Sorrentino's reliance on the notes of other MGH staff members. (#25 ¶ 28)

A second Rogers hearing was held on October 23, 2008. (#25 ¶27) Sorrentino's report was submitted for the court's consideration. (#25 ¶ 28) Huffman opined that Li suffered from delusional disorder, but conceded that his opinion and that of Sorrentino differed from the opinions of Dumont and Yeung. (#25 ¶ 27) Huffman testified that Li "lacked capacity to understand the nature of her illness and that [her] unwillingness to take antipsychotic medications indicated that she was delusional and presented a harm to herself and others." (#25 ¶ 27) According to the plaintiff, Huffman's allegedly faulty

assessment of her condition and his dismissal of the opinions of Dumont and Yeung resulted from "non-compliance with state law and hospital procedure for language access for patients who speak limited English." (#25 ¶ 27)

At the conclusion of the hearing, the Court issued an order of adjudicated incompetence, thereby requiring Li to take antipsychotic medication. (#25 ¶ 29) The plaintiff continued to be held and medicated at MGH until November 7, 2008. (#25 ¶ 29) Li alleges that had MGH provided the services of an interpreter in a reasonable and timely manner, she would not have been diagnosed as delusional or deemed to be in danger of harm, and therefore would not have been involuntarily held in psychiatric care for nearly two months. (#25 ¶ 2)

Now before the Court is defendant MGH's motion to dismiss the malpractice claim against the hospital, Count III of Li's amended complaint, for failure to state a claim.

### *III. The Standard of Review*

A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim. In deciding such a motion, a court must "'accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor.'" *Haley v. City of Boston*, 657 F.3d

39, 46 (1st Cir. 2011) (quoting *Artuso v. Vertex Pharm, Inc.*, 637 F.3d 1, 5 (1st Cir. 2011)). When considering a motion to dismiss, a court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley*, 657 F.3d at 46 (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)).

In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quotation marks and alteration omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to cross the "line from conceivable to plausible." *Id.* at 555, 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citing *Twombly*, 550 U.S. at 556). However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678(quoting *Twombly*, 550 U.S. at 555). Simply, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Id.* at 679.

Lastly, of course, "pro se pleadings are to be liberally construed." *Donovan v. Maine,* 276 F.3d 87, 94 (1st Cir. 2002).

### *IV. Medical/Psychiatric Malpractice (Count III)*

Li alleges that the actions of MGH constitute medical/psychiatric malpractice. MGH argues that no doctor-patient relationship existed between the plaintiff and the hospital as required to make out a prima facie case of medical malpractice, *see Kulas v. Weeber*, 20 Mass. App. Ct. 983, 983, 482 N.E.2d 885, 886 (1985) (quoting *Kapp v. Ballantine*, 380 Mass. 186, 193, 402 N.E.2d 463, 468 (1980))[7], nor was the hospital a licensed physician who could be liable for failure to provide her with informed consent. *See Halley v. Birbiglia*, 390 Mass. 540, 548, 458 N.E.2d 710, 715 (1983); *Harnish v. Children's Hospital*

---

7 More recently the Massachusetts Supreme Judicial Court has "held that a doctor-patient relationship is not a prerequisite to applying G.L. c. 231, § 60B." *Vasa v. Compass Medical, P.C.,* 456 Mass. 175, 179, 921 N.E.2d 963, 967 (Mass., 2010) (citing *Santos v. Kim*, 429 Mass. 130, 133, 706 N.E.2d 658, 661 (1999)).

*Medical Center*, 387 Mass. 152, 157-158, 439 N.E.2d 240, 244 (1982). The Court need not address the merits of the defendant's arguments.

The Supreme Court has stated that:

> Federal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category. They may do so in order to avoid an unnecessary dismissal, to avoid inappropriately stringent application of formal labeling requirements, or to create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal basis.

*Castro v. United States*, 540 U.S. 375, 381-82 (2003) (internal citations omitted).

Applying this principle, Li's amended complaint against MGH can best be read not as one for "malpractice," i.e., a treatment-related claim as would render it subject to the medical malpractice tribunal statute*, see Vasa v. Compass Medical, P.C.,* 456 Mass. 175, 177, 921 N.E.2d 963, 965 (Mass., 2010), but rather a claim that MGH negligently failed to provide her with an interpreter as required by Mass. Gen. L. c. 111 § 25J, a failure that caused her emotional distress. "[C]laims that involve health care providers' nonmedical activities are not subject to the requirements of G.L. c. 231, § 60B." *Vasa*, 456 Mass. at 177 n.4, 921 N.E.2d at 965 n.4 (citing *Leininger v. Franklin Med. Ctr.*, 404 Mass. 245,

248, 534 N.E.2d 1151, 1152-53 (Mass., 1989) (claim that doctors did not follow requirements of commitment statute not subject to G.L. c. 231 § 60B, because it does not involve physicians' medical judgment); *Segal v. First Psychiatric Planners, Inc.*, 68 Mass. App. Ct. 709, 713, 864 N.E.2d 574, 577 (Mass. App. Ct., 2007) (claim that hospital misled patient about terms of admission not subject to G.L. c. 231 § 60B)).

Count III can be viewed as alleging a claim of negligence against MGH. To prevail on a claim of negligence against a hospital, a plaintiff "must prove that the hospital owed him a duty of reasonable care, that the hospital committed a breach of that duty, that damage resulted, and that there was a causal relation between the breach of duty and the damage." *Leavitt v. Brockton Hosp., Inc.*, 454 Mass. 37, 39-40, 907 N.E.2d 213, 215 (2009) (citing *Jupin v. Kask*, 447 Mass. 141, 146, 849 N.E.2d 829, 834-35 (2006)(further citations omitted)). In the amended complaint, Li asserts that she was "in the care of the emergency department at Massachusetts General Hospital" and was "held in the psychiatric unit . . . for 60 days." (#25 ¶ 1) Additionally, Li alleges that while she was at MGH she "was never made aware that she had the right to a language interpreter" and that had she been provided the services of MGH's

Mandarin-speaking staff psychiatrist, or another Mandarin-speaking MGH clinician, or a language interpreter in a reasonable and timely manner, she would not have been diagnosed as delusional or deemed to be in danger of harm. (#25 ¶¶ 1, 2) Thus, she would not have been involuntarily held in the psychiatric care unit for nearly two months. (#25 ¶ 2) Finally, Li contends that the failure to provide an interpreter caused her to suffer panic attacks, feel isolated and helpless, and left her traumatized. (#25 ¶ 2)

Construing Li's *pro se* amended complaint liberally, the facts are sufficient to allege that MGH owed Li a duty of reasonable care in that under Mass. Gen. L. c. 111 § 25J, MGH was obligated to "provide competent interpreter services in connection with all emergency room services provided to every non-English speaker who is a patient," that the duty was breached by the hospital's failure to provide a competent interpreter, that damage resulted in the form of panic attacks and emotional distress, and that there was a causal relation between the breach of duty and the damage. Therefore, MGH's motion to dismiss Count III, construed to allege a claim of negligence, should denied.

## *V. Recommendation*

For the reasons stated, I RECOMMEND that the Motion of Defendant,

Massachusetts General Hospital To Dismiss Counts II-V Of Plaintiff, Yong Li's Complaint Pursuant To Fed. R. Civ. P. 12(b)(6) (#9), to the extent that it seeks dismissal of Count III of the Amended Complaint, be DENIED with the proviso that Count III is construed to allege a claim for negligence rather than malpractice.

### *VI. Review by the District Judge*

The parties are hereby advised that any party who objects to this recommendation must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.

1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Robert B. Collings

ROBERT B. COLLINGS
United States Magistrate Judge

January 22, 2013.