UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
YONG LI,                            )
                                    )
        Plaintiff,                  )    Civil Action No. 11-11557-JCB
                                    )
v.                                  )
                                    )
MASSACHUSETTS GENERAL               )
HOSPITAL,                           )
                                    )
        Defendant.                  )
_____)


ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[Docket No. 96]

October 23, 2014

Boal, M.J.

This action arises out of defendant Massachusetts General Hospital's (the "Hospital") treatment of pro se plaintiff, Yong Li. Li alleges race discrimination in violation of 42 U.S.C. § 1981, negligence, and failure to provide interpreter services in violation of M.G.L. c. 111, § 25J and M.G.L. c. 123, § 23A. The Hospital has moved for summary judgment on all of Li's claims against it. Docket No. 96. For the following reasons, this Court grants the motion.

I.      PROCEDURAL BACKGROUND

Li filed her complaint on September 6, 2011, which was later amended with leave of court. Docket Nos. 1, 24, 25. The amended complaint named as defendants the Hospital as well

-1-

as several doctors that provided treatment to Li at the Hospital.[1]  Docket No. 25 at ¶¶ 4-6.  On

June 29, 2012, the District Court dismissed the claims against the individual doctors.  Docket

No. 46.

On March 29, 2013, the District Court denied the Hospital's motion to dismiss Count III

of the complaint, which alleged medical malpractice.  Docket No. 64.  Instead, the District Court

construed Count III as alleging a negligence claim.  Docket No. 64.

On May 16, 2013, the parties consented to the jurisdiction of a magistrate judge for all

purposes and the case was reassigned to Magistrate Judge Robert Collings.  Docket No. 70.

On July 25, 2014, the Hospital filed the instant motion for summary judgment.  Docket

No. 96.  Li filed an opposition on September 3, 2014.  Docket No. 99.[2]  The Hospital filed a

reply on September 9, 2014.  Docket No. 103.  Li filed a surreply on September 16, 2014.

Docket No. 106.

With the parties' consent, the case was reassigned to the undersigned for all purposes on

September 29, 2014.  Docket No. 113.  See also Docket Nos. 111 and 112.

II.     FACTUAL BACKGROUND

       A.      Scope Of The Record

In response to the Hospital's motion for summary judgment, Li did not specifically

address each of the facts in the Hospital's Local Rule 56.1 statement of undisputed facts.  Rather,

---

[1] Count II of the original complaint alleged that the Hospital violated Title XVIII of the Social Security Act and 42 C.F.R. § 482.12.  Li's amended complaint withdrew Count II. Docket No. 25 at 11.

[2] Li's opposition was due August 29, 2014.  Docket No. 94.  On September 17, 2014, the Court granted, nunc pro tunc, Li's motion for an extension of time to file her opposition.  Docket No. 107.

she submitted her own statement of facts for which she contends there is a genuine issue for trial. Docket No. 102. That statement is mostly supported by her own affidavit. Docket No. 101. The Hospital argues that the Court should strike Li's affidavit under the "sham affidavit" doctrine, disregard Li's statement of facts, and deem admitted the Hospital's statement of facts. Docket No. 103 at 2-4. This Court disagrees.

"When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." Colantuoni v. Alfred Galcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994) (citations omitted). "The purpose of this sham affidavit rule is to protect the procedural integrity of summary judgment." Mahan v. Boston Water & Sewer Comm'n, 179 F.R.D. 49, 53 (D. Mass. 1998). "If a party simply could offer a contradictory, post-deposition affidavit to defeat summary judgment without providing a 'satisfactory explanation' for the contradiction, the purpose of summary judgment would be defeated." Id. (citing Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2nd Cir. 1969)).

However, "[a] subsequent affidavit that merely explains, or amplifies upon, opaque testimony given in a previous deposition is entitled to consideration in opposition to a motion for summary judgment." Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 26 (1st Cir. 2002). As explained below, the Court finds that Li's affidavit does not contradict her deposition testimony but simply explains and expands on her prior testimony. Indeed, after review of Li's deposition testimony, the Court concludes that the Hospital was overzealous in its presentation of Li's testimony.

For example, the Hospital argues that while Li states in her affidavit that her primary language is Mandarin, she testified "consistently and unambiguously" that English was in fact her primary language in 2008, and that she had no problem communicating with the Hospital staff during her hospitalization. Docket No. 103 at 4. With respect to whether her "primary" language was English in 2008, however, she specifically testified:

> Q. Was English your primary language in 2008?
>
> A. What do you mean 2008 English language —
>
> Q. Yeah. Was most of your communication primarily in English in 2008?
>
> A. Yeah.
>
> Q. Okay. And you spoke English at work and at home in 2008?
>
> A. 2008? I never speak English at home.
>
> Q. Okay. But you spoke English primarily at work?
>
> A. 2008, I don't work.
>
> Q. Okay. But you were speaking English primarily out in the community, correct?
>
> A. Yes.

Pl. Dep. at 67-68. Li now explains that she had to speak "broken" English at the Hospital or any other place that was not her home. Docket No. 106 at 2. In addition, Li testified several times that she in fact had trouble communicating with and understanding the Hospital staff. See Pl. Dep. at 61, 67.[3] Accordingly, the Court declines to strike Li's affidavit.

---

[3] The Hospital also overstates other testimony regarding Li's proficiency in English. For example, the Hospital alleges that Li conducted all pretrial discovery in English in another litigation, while she actually testified that a certified court interpreter was used at depositions.

However, pro se status does not insulate a party from complying with procedural and substantive law. Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). Courts have frequently grappled with the tension between evenly enforcing the rules and working an injustice, especially in the summary judgment context. See, e.g., Szillery v. Career Systems Development Corp., No. 08-62, 2008 WL 2789492, * 2 (D. Me. July 17, 2008). However, courts have not typically freed pro se plaintiffs from the pleading burden set forth in Rule 56. Rollins v. Magnusson, No. 03-82, 2004 WL 3007090, * 3-4 (D. Me. December 28, 2004) (granting summary judgment against pro se defendant where response does not contain admissible evidence); Brennan v. Town of South Kingston, No. 10-186, 2011 WL 1898248, * 5 (D.R.I. April 14, 2011) (same); Bartlett v. American Power Conversion Corp., No. 05-084, 2006 WL 2709404, *2 n. 1 (D.R.I. September 20, 2006) (same). Nevertheless, even if the pro se plaintiff fails to respond to the statement of material fact, a court is still required to inquire as to whether the moving party has met its burden. Cordero-Soto v. Island Fin., Inc., 418 F.3d 114, 118 (1st Cir. 2005). Here, although Li has not responded directly to each of the Hospital's statements of fact, she has submitted her own statement of facts that she contends are disputed with citations to her affidavit and other documents. Accordingly, in ruling on the motion, the Court will only consider those facts adequately supported by the record, either through affidavits or the parties' exhibits.[4]

---

Compare Def. SOF at ¶ 9 with Pl. Dep. at 35-36.

[4] The Court will, as it must, only consider evidence that would be admissible at trial. See Iorio v. Aramark Servicemaster, No. 03-40147-FDS, 2005 WL 3728715, at *6 (D. Mass. Sept. 30, 2005). For example, the Court will not consider a Boston Globe newspaper article about Li's fall (Exhibit A to Li's statement of facts) because the article contains inadmissible hearsay. Docket No. 102-1 at 2.

B.  Facts[5]

Li was born in China and her native language is Mandarin.[6] She took some basic English lessons starting in middle school.[7] Li lived and worked in the United Kingdom from approximately 1990 to 1997.[8] She then moved to Massachusetts in 1997 or 1998, where she worked for Raytheon Corporation as a software engineer.[9] The parties dispute Li's English proficiency. The Hospital alleges that Li communicated in English at her jobs in the United Kingdom and in Massachusetts while Li states that she spoke only limited English.[10] She states that Mandarin remains her "primary language."[11]

In or around 2005, Li filed a lawsuit in the U.S. District Court for the District of Massachusetts against Raytheon alleging discrimination.[12] Li also filed a lawsuit alleging

---

[5] Because this case is before the Court on a motion for summary judgment, the Court sets out any disputed facts in the light most favorable to Li, the non-moving party. See DeNovellis v. Shalala, 124 F.3d 298, 302 (1st Cir. 1997). The facts are derived from the Defendant, Massachusetts General Hospital's Concise Statement of the Material Facts Pursuant to Local Rule 56.1 (Docket No. 98) ("Def. SOF"); Plaintiff's Statement of the Material Facts Pursuant to Local Rule 56.1 (Docket No. 102) ("Pl. SOF"); and the transcript of Li's deposition (Docket No. 116) ("Pl. Dep.").

[6] Def. SOF ¶ 1; Pl. SOF ¶ 1. The Defendants cite to support this statement appears to be incorrect. In any event, the parties do not dispute this fact.

[7] Def. SOF ¶ 2; Pl. Dep. at 5-6.

[8] Def. SOF ¶ 3, Pl. SOF ¶ 1.

[9] Def. SOF ¶ 5, Pl. SOF ¶ 2; Pl. Dep. at 8.

[10] Def. SOF ¶ 4, 6; Pl. SOF ¶ 1.

[11] Pl. SOF ¶ 1.

[12] Def. SOF ¶ 8; Pl. SOF ¶ 4.

discrimination in state court in 2006.[13] The Massachusetts Appeals Court dismissed Li's discrimination claim in August 2008.[14]

Following the Appeals Court's dismissal of Li's claim, she went to the John Adams Courthouse in Boston on September 4, 2008 to perform what she calls a "Chinese symbolic suicide."[15] According to Li, a "Chinese symbolic suicide" is a "common form of demonstration or protest used by Chinese nationals to simulate a suicidal act. This is done to force the Chinese government or an employer . . . to respond to the protesters' wishes . . . [or] to bring media attention to their cause."[16] Li stood on a balcony inside the Courthouse with a noose tied around her neck and waist, holding a sign with the word "Injustice" written on it.[17] During her demonstration, Li lost her footing and fell approximately fifteen to twenty feet onto the staircase below.[18]

Li was transported to the Hospital for treatment of the injuries she sustained as a result of the fall.[19] She alleges that despite the fact that she spoke with a heavy accent and in "broken English," she was not informed that she had the right to an interpreter.[20] The Hospital maintains

---

[13] Def. SOF ¶¶ 8, 10; Pl. SOF ¶ 4.

[14] Def. SOF ¶ 12; Pl. SOF ¶ 4.

[15] Def. SOF ¶ 12; Pl. SOF ¶ 6.

[16] Pl. SOF ¶ 6.

[17] Def. SOF ¶ 13; Pl. SOF ¶ 6.

[18] Def. SOF ¶ 14; Pl. SOF ¶ 6.

[19] Def. SOF ¶ 16; Pl. SOF ¶ 7.

[20] Pl. SOF ¶ 7.

that Li had no problem communicating in English with any of the Emergency Department personnel.[21] Li claims that when asked about the event leading up to her injuries, she did not know the English word "symbolic" nor did she possess the correct vocabulary to explain the circumstances of her accident.[22] Li, therefore, used the word "suicide" in a context that was not correctly understood by the doctors, who made notes in the medical file that she repeatedly admitted to having attempted suicide.[23]

On September 11, 2008, Li was involuntarily transferred to the inpatient psychiatric section of the Hospital.[24] Li was offered the use of a Mandarin speaking interpreter on September 22 and 25, 2008.[25] Li testified that she did not want an interpreter, but rather an Asian healthcare provider who would understand Chinese culture and explain to other members of the staff that she had not actually attempted suicide but was rather protesting what she perceived as injustice.[26]

Li testified that she did not believe anyone from the Hospital was against Asians

---

[21] Def. SOF ¶ 16. The Hospital maintains that Li testified at her deposition that she did not have any problem communicating with the staff in the emergency room. Id. However, the cited deposition testimony does not quite support that statement. Instead, Li testified that she just allowed the staff to do whatever they wanted to do; she "did not care of the communication at that time." Pl. Dep. at 58. She also testified that there was not much communication to be done at that time. Pl. Dep. at 122. Finally, she testified that she was offered a medical staff person who spoke some Mandarin. Pl. Dep. at 57-58.

[22] Pl. SOF ¶ 8.

[23] Pl. SOF ¶ 8.

[24] Def. SOF ¶ 17; Pl. SOF ¶ 9.

[25] Def. SOF ¶ 20; Pl. SOF ¶ 14.

[26] Def. SOF ¶ 21; Pl. Dep. at 68-69.

specifically; there were no racial slurs or negative comments about her because she was Asian; and she could not cite to any instances where any staff member expressed any animus toward her.[27] Rather, she appears to be alleging that the Hospital discriminated against her by not providing an Asian doctor specifically.[28]

Li alleges that as a result of the Hospital's failure to provide interpreter services and/or the services of an Asian doctor, she was incorrectly diagnosed as delusional and deemed to be a danger to herself, and therefore was involuntarily held in psychiatric care for nearly two months.[29] She alleges that she felt "helpless and misunderstood" and experienced panic attacks.[30] She also alleges that after being discharged from the Hospital on November 7, 2008, she was "so traumatized from her experience at [the Hospital]," that she "voluntarily admitted herself to inpatient care at Emerson Hospital where she was treated for trauma and on-going panic attacks."[31]

## III. ANALYSIS

### A. Standard Of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[27] Def. SOF ¶ 22.

[28] Pl. Dep. at 74-75; 84. Li did see an Asian doctor on October 22, 2008, albeit one day before her second hearing. Pl. SOF at ¶ 21. She also admitted to telling others she was suicidal in order to get media attention. Docket No. 102-2 at 1.

[29] Pl. SOF ¶¶ 9-27.

[30] Pl. SOF ¶¶ 9, 12, 27.

[31] Pl. SOF ¶ 28.

56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (quotations and citations omitted). A material fact is one which has "the potential to affect the outcome of the suit under the applicable law." Id. (quotations and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. See id. at 324. "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. See O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate." Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

B.    42 U.S.C. § 1981

The Hospital argues that summary judgment as to Li's Section 1981 claim is appropriate because Li has provided no evidence of any impaired contractual relationship. Docket No. 97 at 9-11. The Hospital also argues that Li has failed to provide any direct or indirect evidence of

racial discrimination.  Id. at 6-9.  This Court agrees.

1.      Contractual Relationship

Title 42, United States Code, Section 1981 prohibits both public and private racial discrimination in certain specified activities, including the making and enforcement of contracts. Garrett v. Tandy Corp., 295 F.3d 94, 98 (1st Cir. 2002) (citing Runyon v. McCrary, 427 U.S. 160, 168-175 (1976)).  Section 1981 states, in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . .
>
> ***
>
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.

42 U.S.C. § 1981(a), (b).

To prevail on a Section 1981 claim, Li must show that she is a member of a racial minority;[32] the defendant discriminated against her on the basis of her race; and the discrimination implicated one or more of the activities enumerated in the statute.  Garrett, 295 F.3d at 98 (citation omitted).  Here, Li alleges that the Hospital's alleged actions implicated her right to make and enforce contracts.  Docket No. 100 at 12, 17.

"The legislative history . . . makes it crystal clear that Congress did not intend to convert section 1981 into a general prohibition against race discrimination."  Garrett, 295 F.3d at 100.

---

[32] The Hospital does not dispute that Li is a member of a racial minority for purposes of their motion for summary judgment.  In a prior case, the District Court (Gorton, J.) found that Li's claims of discrimination against her on the basis of her Chinese ancestry fell within the purview of Section 1981.  Li v. Reade, 609 F. Supp. 2d 148, 150-151 (D. Mass. 2009).

Therefore, Li "must initially identify an impaired 'contractual relationship,' . . . under which [she] has rights." Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006). "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." Id. The plaintiff must "show a sufficient nexus between the asserted discrimination and some contractual right or relationship." Garrett, 295 F.3d at 98.

Here, Li appears to argue that the Hospital's alleged conduct impaired her contractual relationship with her insurance company, United Healthcare. Docket No. 100 at 17. Li states that the Hospital charged United Healthcare "significant cost[s]" for her stay at the Hospital. Id. However, Li does not explain, let alone provide any evidence, as to how the Hospital's alleged conduct impaired her contractual relationship with United Healthcare. Accordingly, the Court finds that Li has failed to provide any evidence to show an impaired contractual relationship under Section 1981.

      2.      Intentional Discrimination

Li's Section 1981 claim also fails because she has provided no evidence of intentional discrimination against her on the basis of her race. Discriminatory intent may be established directly or indirectly. Li v. Reade, 746 F. Supp. 2d 245, 250 (D. Mass. 2010). "Direct evidence of discrimination includes racial insults that, on their face, prove a discriminatory motive." Id. (citations omitted). In order to prove discriminatory intent indirectly, the plaintiff must produce evidence that the defendant's practices exhibited a pattern of systematic discrimination. Id. To do so, for example, Li must produce some evidence that the Hospital treated her differently than

a similarly situated Caucasian patient because of her race.  See id.; see also generally Conward v. Cambridge School Comm., 171 F.3d 12, 19 (1st Cir. 1999).[33]

Li has provided no direct evidence of discrimination.  Indeed, Li testified at her deposition that she did not believe anyone from the Hospital was against Asians specifically; there were no racial slurs or negative comments about her because she was Asian; and she could not cite to any instances where any staff member expressed any animus toward her.  Pl. Dep. at 74, 75-76, 117, 148.  She raises one alleged incident where Li herself was accused of discriminating against Caucasian Hospital staff.  Docket No. 100 at 14-15.  However, that Li herself may have been accused of discriminating against others is not evidence of discriminatory intent by the Hospital.

There is also no indirect evidence of discrimination.  Li points to the Hospital's adoption of a non-Mandarin speaking doctor's opinion over the opinion of a Mandarin speaking doctor.  Docket No. 100 at 14.  She also points to the prescription of anti-psychotic medication by one of the Hospital doctors to allegedly stop her from bringing additional litigation.  Id. at 16.  Neither one of those examples, however, shows any intent to discriminate on the basis of race or that the Hospital treated Li differently than a similarly situated Caucasian individual.  Accordingly, the Court finds that Li has failed to show any genuine issue of material fact regarding discriminatory

---

[33] Courts have generally applied the burden shifting standard framework for employment discrimination cases established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), to Section 1981 cases.  See Conward, 171 F.3d at 19.  Under that framework, a plaintiff's prima facie case "normally would include a showing that he was a member of a protected class and qualified for the employment he held, that his employer took an adverse employment action against him, and that his position remained open for (or was filled by) a person whose qualifications were similar to his."  Id.  That framework, however, is not easily applicable to Li's claims.  The Court follows the standard set forth by the District Court in a prior case brought by Li, which asserted similar claims.  See Li v. Reade, 746 F. Supp. 2d 245, 250 (D. Mass. 2010).

intent by the Hospital and the Hospital is entitled to judgment as a matter of law on Li's Section 1981 claim.

        C.      <u>Failure To Provide Interpreter Services</u>

In Counts IV and V of the Amended Complaint, Li alleges that the Hospital failed to provide competent interpreter services in violation of M.G.L. c. 111, § 25J and M.G.L. c. 123, § 23A. Section 25J applies to emergency room services while Section 23A applies to acute psychiatric services. Both statutes require the provision of "competent interpreter services" to "every non-English speaker." M.G.L. c. 111, § 25J(b); M.G.L. c. 123, § 23A(b). A "non-English speaker" is a "person who cannot speak or understand, or has difficulty with speaking or understanding, the English language because the speaker primarily or only uses a spoken language other than English." M.G.L. c. 111, § 25J(a); M.G.L. c. 123, § 23A(a).

A non-English speaker who is denied appropriate emergency health care or acute psychiatric care by a hospital "by reason of such hospital's not having exercised reasonable judgment in making competent interpreter services available," may bring an action for declaratory or injunctive relief. M.G.L. c. 111, § 25J(e); M.G.L. c. 123, § 23A(e). The non-English speaker may also recover damages of at least $250, reasonable costs and attorney's fees. <u>Id.</u>

The Hospital argues that Li does not meet the statutory definition of "non-English speaking person." Docket No. 97 at 14, 15. The Court finds that Li has presented sufficient evidence to raise a genuine issue of material fact as to whether she qualifies as a "non-English speaking person." As stated above, the Hospital overstates Li's testimony regarding her ability to speak and understand English. English is her second language. Pl. SOF ¶ 1. She testified that

-14-

she never spoke English at home. Pl. Dep. at 67. She has attested that she did not know the word "symbolic" nor did she possess the correct vocabulary to adequately explain her circumstances to the Hospital's staff. Pl. SOF ¶ 8. She also testified that she had difficulty communicating with the Hospital's doctors. Pl. Dep. at 61, 67. The Court also notes that her deposition testimony shows that she does have some difficulty understanding English words. See, e.g., Pl. Dep. at 47, 141.

Li, however, has failed to show any evidence that she was denied appropriate emergency health services as a result of the Hospital's failure to provide an interpreter. Nothing in the record shows that she received inadequate or inappropriate emergency care for her physical injuries or that she took any issue with that care, which apparently lasted and required hospitalization until September 11, 2008. Accordingly, Li has failed to show a triable issue with respect to her claim that she was not provided competent interpreter services in the emergency room in violation of Section 25J.

Li has also failed to show any evidence that she was denied appropriate psychiatric services as a result of the hospital's failure to provide competent interpreter services. While she alleges that she would not have been involuntarily committed had she received an interpreter, there is no dispute that she was offered an interpreter on two occasions.[34] Li is really

---

[34] The Court recognizes that Li was not offered an interpreter until September 22, 2008, eleven days after she was first transferred to the psychiatric unit and that she claims that she would not have been involuntarily held for nearly two months had an interpreter been provided. However, Li has presented no evidence that the hospital's alleged failure to provide an interpreter denied her appropriate psychiatric services. In other words, Li has provided no evidence that she would not have been involuntarily committed for two months had the Hospital provided an interpreter immediately upon admission in the psychiatric unit. Indeed, even after she met with an interpreter on September 22, 2008 and a Mandarin-speaking doctor on October 22, 2008, she was found incompetent and ordered held at the Hospital by a court order dated

complaining about the Hospital's refusal to provide an Asian doctor who would understand Chinese culture and explain to the other members of the healthcare team that her jumping off the balcony was not a suicide attempt but instead a "Chinese symbolic suicide." The Hospital had no obligation under Section 23A to accommodate Li's request.

Accordingly, the Hospital is entitled to judgment as a matter of law on Counts IV and V of the Complaint.

### D.   Negligence

The Court previously construed Count III of the Amended Complaint to allege a claim of negligence. Docket No. 62, adopted by Docket No. 64. To prevail on a claim of negligence against a hospital, a plaintiff "must prove that the hospital owed him a duty of reasonable care, that the hospital committed a breach of that duty, that damage resulted, and that there was a causal relation between the breach of duty and the damage." Leavitt v. Brockton Hosp., Inc., 454 Mass. 37, 39-40 (2009) (citation omitted). Li's claim is based on a breach of the Hospital's duty to provide competent interpreter services under Sections 25J and 23A. See Docket No. 62 at 12-13. As set forth above, Li has not shown that the Hospital breached its duty under those statutes and, therefore, Li's negligence claim must also fail.

Further, even if Li had shown a breach of the Hospital's duty to provide an interpreter, she has provided no evidence to show a causal relation between the alleged breach and her damages. By her own version of the events, Li was involuntarily committed by court order, after two hearings. Pl. SOF at ¶¶ 18, 20, 22, 24. She was represented by court-appointed counsel. Pl. SOF at ¶ 11. In addition, the second hearing occurred after she was provided with an interpreter

---

October 23, 2008. Pl. SOF at ¶¶ 14, 21, 22, 24.

and after she met with a Mandarin-speaking doctor. Pl. SOF at ¶¶ 14, 15, 21. Therefore, Li has provided no evidence that she would not have been involuntarily committed had the Hospital provided interpreter services at the emergency room or the psychiatric unit.

Accordingly, the Court finds that the Hospital is also entitled to summary judgment on its favor with respect to Li's negligence claim.

IV. ORDER

For the foregoing reasons, the Court grants the Hospital's motion for summary judgment.

    /s/ Jennifer C. Boal  
JENNIFER C. BOAL  
UNITED STATES MAGISTRATE JUDGE